# Cantrell Construction Co. *v.* Marcus Hook, Appellant.

*Municipalities—Boroughs—Contracts — Liability of borough— Case for jury.*

In an action by a contractor for payment for work done in connection with the water system of a borough, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where the controlling questions of fact are whether the alterations were occasioned through the contractor's failure to complete the original contract satisfactorily, or if the additional work was necessitated through the mistake of the borough engineer in locating the line of the sewer, etc., and whether the work was legally authorized by the borough officials.

Argued Nov. 19, 1918. Appeal, No. 65, Oct. T., 1918, by defendant, from judgment of C. P. Delaware Co., on verdict for plaintiff in case of Cantrell Construction Co. v. Borough of Marcus Hook. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit on contract for municipal improvements. Before BROOMALL, J.

Verdict for plaintiff for $1,438.72 and judgment thereon. Defendant appealed.

The facts appear in the opinion of the court below discharging motions for new trial and for judgment for defendant n. o. v.

The plaintiff and defendant entered into a written contract under date of June 29, 1910, by the terms of which the plaintiff undertook to construct a sewer system in the streets of the defendant borough. A part of this sys-

tem was a pumping station for the purpose of elevating the sewage so that it might flow into the river. In this pumping station the plaintiff was to install two pumps of a certain designed character. The work was performed and accepted by the defendant on April 17, 1911, and the contract price was paid. This suit has been brought by the plaintiff for the purpose of recovering claims alleged to be outside of the contract. These claims may be classified in four parts, as follows:

No. 1. A sewer pipe in a part of the system was laid in a public street crossing a railroad. The natural and economic method of constructing a sewer is to begin at the lowest point of the system. By this method the work is better relieved of water as the work proceeds to points of less depression. When the digger of the trench came to the railroad it had to await upon arrangements to be made with the railroad company before the trench could be dug under the railroad. Thereupon the plaintiff proceeded with the digging on the other side of the railroad and in order to free the trench from water they had to pump the water over the railroad into the trench on the other side which was of a lower depression. The cost of doing this constituted the claim under this head. But one of the clauses of the contract between the parties is "The Contractor shall meet all requirements of the railroads and railways wherever the sewer crosses or is adjacent to their tracks." Whatever delay therefore resulted in complying with the requirements of the railroad company was something for which the plaintiff undertook to be responsible by this provision in the contract. Hence when the plaintiff offered to prove this claim upon trial, upon objection being made, it was excluded. We see no error in this.

No. 2. This claim is for rock excavation. It appears that the information which the plaintiff obtained from the defendant did not disclose any rock excavation. But one of the provisions of the contract is "The Engineer has made borings for the location of rock measurements

and estimates of the length of the various parts of the sewer, the quantity of pipe and other materials required and the amount to excavate, and his notes and measurements may be inspected by the contractor but their accuracy is not guaranteed and the contractor must answer all responsibility for any errors or omissions in such borings measurements and estimates." Under this clause of the contract whatever the engineer did or did not do visits no responsibility upon the defendant. The offer of this claim being objected to was excluded and we see no error in this.

No. 3. Part of the sewer pipe was laid in Market street between Second street and Fourth street. After the contract work had been performed and paid for this part of the sewer pipe became obstructed. The plaintiff excavated the trench and it was found that the sewer pipe was not laid at a continuous gradient but had a hump in it which occasioned the obstruction. Primarily this was the work of the plaintiff for which the defendant could not be held to be responsible. But the plaintiff introduced evidence tending to show that the sewer pipe was laid in accordance with the grades given by the borough engineer and the contention of the plaintiff is that if that be true then the hump was attributable to the borough engineer. The contract requires that the pipe should be laid in accordance with the grades given by the borough engineer. Contention of the defendant was that the grades given by the borough engineer called for a continuous gradient without any hump. If the grades given by the borough engineer called for this hump, then the expense of correcting it devolved upon defendant—the work having been done with the knowledge of the defendant and accepted or adopted by the borough. On the other hand, if the gradient given by the borough engineer did not call for this hump and the plaintiff made a mistake in not following this gradient, then the defendant would not be responsible for the cost of the change. This was a question of fact to be determined by the jury and

although the evidence of the defendant preponderated yet we cannot say that the evidence of the plaintiff was such as not to warrant the jury in adopting it. This question of fact was submitted to the jury and determined in favor of the plaintiff. We do not feel called upon to interfere with the conclusion of the jury in this respect.

No. 4. This claim is for alterations to the pumps made after the contract had been performed and paid for. Sometime after the pumps had been installed they would not work. The plaintiff claimed that this failure on the part of the pumps was owing to defects in the character of pumps designed by the contract. On the other hand, the defendant claimed that the failure of the pumps to operate resulted from the manner in which the plaintiff had done the work in the installation of them. Evidence was introduced on the one side and on the other to support these respective contentions. This question of fact was submitted to the jury and they decided in favor of the plaintiff. While the jury might have well adopted the contention presented by the defendant's evidence, yet we are unable to say that their taking an opposite view was wholly without basis and we do not feel called upon to interfere with the results at which the jury arrived.

For the reasons above stated, we refuse the motions of the plaintiff and defendant for a new trial and refuse defendant's motion for a judgment n. o. v.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal to enter judgment for defendant n. o. v.

*John E. McDonough,* and with him *A. D. MacDade,* for appellant.—The work in question was not legally authorized: Jones v. Schuylkill Haven Co., 202 Pa. 164; Dougherty v. Borough of Norwood, 196 Pa. 92; Milford v. Water Co., 124 Pa. 610.

W. *Roger Fronefield,* for appellee, cited: Seitzinger v. Edison Co., 187 Pa. 539; Jeffreys v. Versailles Borough, 55 Pa. Superior Ct. 85; Tarentum v. Moorehead, 26 Pa. Superior Ct. 273; Boyd v. Carbon Co., 182 Pa. 206.

OPINION BY HEAD, J., April 21, 1919:

In the opinion filed sur motions for new trial and judgment n. o. v. the learned court below, in paragraphs 3 and 4,—which will be printed in the report of the case,—has demonstrated to our satisfaction that the two really controlling questions were properly disposed of at the trial. The court correctly held that the plaintiff company was not only justified in laying the pipe according to the grade established by the borough engineer, but was in fact required to do so. If a mistake were made and it turned out to be the blunder of the engineer the city's employee, and not that of the plaintiff company, the responsibility for the consequence of the error could not be visited upon the latter. By the verdict it is established the plaintiff was without fault and the mistake, if any, was that of the defendant.

The same line of reasoning led to a proper submission to the jury of the remaining question concerning the pumping. It clearly enough appears the plaintiff was not responsible for the design or capacity of the pumps. Its duty was to install and put in operation those designed and specified by the city. The jury have said they performed their contract and that the difficulty that subsequently arose was to be attributed to the failure of the city to design and specify pumps of sufficient capacity to do the work. There was strong evidence that when the pumps were so altered as to increase their power and capacity the difficulty disappeared. We conclude, therefore, the two questions referred to were properly disposed of in the court below.

We are unable to perceive any such variance between pleadings and proof as would warrant a reversal of this judgment. The plaintiff claims for alterations in the

pumping plant designed by council after the original plant had been duly installed, accepted by the city, and fully paid for. This was in no proper sense a bill for "extras" within the meaning of the original contract. It was practically new work. It is not apparent that the city was in any way harmed by the use of the word "alterations" in the statement of claim, instead of some other word or phrase that might have more accurately described the work actually done. It is apparent, too, that under the situation as it arose, the new work called for was in the nature of emergency work. The evidence fairly shows it was actually authorized by council in session and not merely by some administrative officer. We are not to be understood as saying that even if it had been such act there would not be any liability of the city under the circumstances. That question does not arise. Of course, if the action of the council in this respect, after due deliberation and judgment, had been placed upon the minutes of council, these minutes would have been the best evidence of the action taken and should have been produced; but if no minutes were kept of such action, we think it would be impossible to maintain successfully the city could thereby escape liability. There is no statutory obligation in such a case as there sometimes is that the ayes and nays should be taken and the vote recorded in the minutes of council.

Upon a review of the whole case, we are of opinion the record discloses no reversible error.

Judgment affirmed.